```
            UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,   :   Criminal No:  06-305 (JDB)
                            :
            v.              :
                            :
NJOCK EYONG,                :
                            :
            Defendant.      :
                            :
```

**GOVERNMENT'S MOTION IN LIMINE AND FIRST NOTICE OF INTENTION
TO INTRODUCE EVIDENCE PURSUANT TO FED. R. EVID. 404(B)**

The United States, by and through it attorney, the United States Attorney for the District of Columbia, hereby submits this motion in limine and first notice of intent to introduce evidence at trial, pursuant to the Federal Rules of Evidence, Rule 404(b), relating to the defendant. It is possible that we may file additional materials, if permitted by the Court. In support of its motion and this first notice, the United States relies on the points and authorities set forth below.

## I.   INTRODUCTION

On March 23, 2007, the grand jury returned a nine-count superseding indictment against the defendant, charging him with false personation of United States Congressman Donald Payne of New Jersey, possession of fraudulent immigration documents, wire fraud, and aiding and abetting those offenses. The defendant is alleged to have used the official stationary and facsimile-signature of Congressman Payne as part of his demand that consular officials in Berlin and Frankfurt, Germany, and Yaounde,

-2-

Cameroon issue immigration documents to various specific individuals from his native country, Cameroon. In these letters, and subsequent verbal and fax contacts with the U.S. embassies in those locations, the defendant and others claimed falsely that the individuals had been invited *by the Congressman* to attend meetings of the Congressional Black Caucus Foundation, Inc., and that all expenses would be paid by Congressman Payne.

When consular officials in Cameroon and Germany refused to issue visas, the defendant made telephone calls to the embassies to express what he represented to be the Congressman's displeasure and faxed documents in support of the fraudulent applications, which purported to be from the Congressman.

When law enforcement officers confronted the defendant with the letters and the other materials provided to the consular authorities, he disclaimed any knowledge, pretending to speculate that they may have been sent by a friend of his -- now dead -- who he had allowed to visit him at the Congressman's offices. When confronted with handwritten cover sheets for the facsimile transmission of the letters to various U.S. embassies, however, the defendant admitted that the handwriting on these cover sheets was his and that he believed that he had, indeed, sent the fax communications.

-3-

## II.  PROPOSED RULE 404(B) EVIDENCE

The government believes that some of the following evidence is intertwined in the charged crimes; however, to the extent that the Court disagrees, we argue that the proposed evidence admissible under Fed. R. Evid. 404(b):

1.  The government will seek to prove that the defendant filed false, fraudulent and perjurious affidavits in support of his own asylum application in the United States, and in support of the applications of others.  In the most recent example, the presiding immigration judge -- finding that the defendant was not credible -- explicitly found the defendant's sworn testimony to be inconsistent with his own sworn asylum application and stated that "based upon Njock's apparently perjured testimony and presentation of fabricated evidence in this case, this necessarily raises questions about the validity of his own asylum claim and those of the many others he appears to have assisted in the U.S. and Europe."[1]  The government has located many false affidavits signed by the defendant under penalty of perjury, and has provided them as discovery.

This evidence is relevant because Counts 1, 3 and 7 relate to an individual claiming to be named "Oben Tabi Eyong" and the defendant's brother, and a draft of an affidavit that does not

---

[1]  *See* In re Gideon Osei Eyong, Case #A 97-621-971 (heard in Baltimore, Maryland), Opinion of Judge Elizabeth A. Kessler, dated June 30, 2006 at page 12.

-4-

appear to have been presented with an asylum application, prepared in 2001, was written on behalf of an individual who the defendant claimed was his brother, was named "Oben Tabi Eyong." The government will seek to prove through this affidavit and the context of the defendant's activities in asylum proceedings that the defendant's motive in seeking a visitor visa to bring "Oben Tabi Eyong" to the United States ultimately was to procure asylum for him, directly contradicting the claims: 1) in his "Congressman Payne" letter (see Count I) that "Oben Tabi Eyong" was coming to the United States to attend a graduation ceremony; and 2) in the visa application that followed  (see Count II) that his visit would last a mere "[e]leven days."

    2.   The defendant entered the United States illegally, in 1999, on a flight from Madrid, Spain, to New York's John F. Kennedy International Airport.  Soon thereafter, the defendant requested asylum in the United States, using false information on his application and forged, false, and fraudulent documentation.

### III.  BASIS FOR ADMISSION OF THIS EVIDENCE

Rule 404(b) of the Federal Rules of Evidence governs the admission of other crimes, wrongs or acts of a defendant.  To the extent that it is not intertwined with the charged offenses, evidence of other crimes, wrongs or acts is admissible under Fed. R. Evid. 404(b) if offered for a permissible purpose.  Such permissible purposes include proof of intent, motive,

-5-

opportunity, plan, knowledge, identity or absence of mistake or accident. United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990), cert. denied, 498 U.S. 825 (1990). "[U]nder Rule 404(b), any purpose for which bad acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove bad character." Id. In determining whether such evidence is admissible, the Court undertakes a two part analysis. First, the Court considers whether the evidence is "probative of some material issue other than character." United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994). The federal rule is one of inclusion, not exclusion; the evidence may be offered for any purpose, so long as the evidence is not offered solely to prove character. See United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc); United States v. Johnson, 802 F.2d 1459 (D.C. Cir. 1986). If the Court deems the evidence to be relevant, the Court should exclude the evidence only if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978); see also Huddleston v. United States, 485 U.S. 681, 686 (1988). In close cases, the rule tilts toward the admission of the other conduct evidence. See United States v. Johnson, 802 F.2d at 1463-64 ("the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged") (quoting

-6-

United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978)). The D.C. Circuit has recognized that "Rule 404(b) evidence will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation and the like." United States v. Crowder, 141 F.3d at 1208.

All of the evidence summarized above is probative of the government's allegation that the defendant knowingly provided forged documents and false information, frequently under oath, in order to provide to individuals from his country the ability to enter and remain in the United States.  This activity is relevant to establish the knowledge, intent, motive, and *modus operandi* of the defendant's actions, even where some of these activities pre- and post-date the criminal acts specified in the Indictment. See, e.g, United States v. Schardar, 850 F.2d 1457, 1463 (11th Cir.) (testimony on uncharged misconduct that occurred some nine months after last act of fraud charged in indictment was admissible to prove defendant's intent since subsequent misconduct was similar to the misconduct in the transactions forming the basis of the charged crimes), cert. denied, 488 U.S. 932 (1988); United States v. Terebecki, 692 F.2d 1345, 1349 (11th Cir. 1982) (no abuse of discretion in admitting evidence of extrinsic offense, notwithstanding that 15 months had elapsed between charged offense and subsequent extrinsic offense, where defendant's conduct in extrinsic offense was very similar to his

-7-

conduct in charged offense): <u>United States v. Hadaway</u>, 681 F.2d 214, 217-218 (4th Cir. 1982) (in prosecution for aiding and abetting in theft of televisions from interstate commerce where defendant contended that he merely procured truck for friends, without knowing its intended use, subsequent similar other crimes evidence was admissible and relevant on issue of whether defendant knowingly aided and abetted commission of charged crime, even though other crimes were committed about 18 months after the crime charged).  In particular, where, as here, the defendant has claimed that the letters were forged and sent from the Congressman's offices without his knowledge -- by another individual to whom he merely but unwisely provided access to the facilities -- the government should be permitted to prove his knowledge and direct participation by showing his past and continuous conduct.  Specifically, it is directly relevant to the government's proof that the defendant *himself* had lied, forged, impersonated, and cheated immigration authorities before, during and after the conduct alleged in the indictment.[2]  In any case of this nature, this proof would be relevant to the defendant's intent, motive, opportunity, plan, knowledge, identity and the

---

[2] It should be noted that the testimony presented by the defendant in the *Gideon Osei Eyong* matter (*see*, *supra*, at note 1) -- testimony that the immigration judge described as "apparently perjured" -- occurred while the defendant knew he was under investigation for having personated Congressman Payne, at a time when the defendant and his attorney were actively attempting to negotiate a pre-indictment plea in this case.

-8-

absence of mistake or accident.

Here, the defendant's first explanation was that his now-dead friend took the Congressman's stationary and signature stamp completely without his knowledge.  The jury should be permitted to assess this explanation in light of the defendant's sustained course of similar conduct before, during and after the events charged.

The defendant's second way of explanation appears to parse his involvement to a mere faxing of documents to the embassies, without knowing their contents.  This too, is an explanation that the jury should be entitled to assess, in light of the defendant's similar activities.

The government by no means concedes that the defendant's now-dead friend had anything to do with these crimes; and if the friend had even the smallest part in this, the government does not concede that he did so without the defendant's knowledge and direct participation.  Given the defendant's lengthy participation in immigration fraud, it would be reasonable for the jury to conclude:  1) that he directly participated in the personation of his employer, the Congressman; 2) that he had complete knowledge of the scheme to defraud; 3) that his explanation to law enforcement was false; and 4) that a guilty state of mind caused him to offer a false explanation when confronted by law enforcement.  The defendant's past, concurrent,

-9-

and continued effort to defraud immigration authorities is certainly probative of these important jury questions.

## IV.   CONCLUSION

Application of the legal principles surrounding Rule 404(b) demonstrates that the proffered evidence is probative of relevant issues and ought to be admitted. For these reasons, the government respectfully will seek admission of this evidence at the trial of this matter.

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR
                                        UNITED STATES ATTORNEY
                                        D.C. BAR # 498610

By: _____
     BARBARA E. KITTAY
     D.C. Bar #414216
     PRECIOUS MURCHISON
     Member of the Maryland Bar
     Assistant U.S. Attorneys
     555 4th Street, N.W.
     Washington, D.C. 20530
     (202) 514-6940, (202) 307-6080
     Barbara.Kittay@usdoj.gov
     Precious.Murchison@usdoj.gov