UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Cr. No. 06-305 (JDB) |
| | : |
| NJOCK EYONG, | : |
| | : |
| Defendant. | : |

## MOTION TO TAKE FOREIGN DEPOSITIONS PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

### INTRODUCTION

Pursuant to Rule 15 of the Federal Rules of Criminal Procedure, counsel for Mr. Eyong moves the Court for an order that the testimony of Thompson Ndip of Cameroon, Valery Donfack of Hanover, Germany, and Oben Eyong of Berlin, Germany, be taken by deposition on a date to be agreed upon by the parties. As discussed herein, each of these witnesses has been interviewed by defense counsel, has relevant information to offer, is willing to be deposed, and is unwilling or unable to come to the United States for trial.

### FACTS

The government has charged, on March 23, 2007, Mr. Eyong in a nine-count indictment[1] with false personation of a federal official, fraud and misuse of visas or other documents, and fraud by wire scheme. Count One charges that between May 1, 2003 and May 13, 2003, Mr.

---

[1] The indictment does not indicate that it is a superseding indictment, although it is the second indictment in the case. Defendant assumes that the government is proceeding on the March 23 indictment, and not on the original one. If that is correct, then defendant withdraws his previously filed motion to dismiss defective counts of the original indictment.

Eyong falsely pretended to be Congressman Donald Payne of New Jersey and demanded that a U.S. visa be issued to Oben Tabi Eyong. Count Two charges that between August 19, 2003 and September 17, 2003, Mr. Eyong falsely pretended to be Congressman Donald Payne of New Jersey and demanded U.S. visas for nine specific individuals residing in Cameroon. Count Three charges that between August 19, 2003 and September 17, 2003, Mr. Eyong, while falsely pretending to be Congressman Payne, demanded a U.S. visa be issued to Valery Donfack. Count Four charges that between May 1, 2003 and May 13, 2003, Mr. Eyong caused to be presented a visa application to the Consular Section of the U.S. Embassy in Berlin on behalf of Oben Tabi Eyong which contained a false statement that the applicant intended to stay in the United States for 11 days. Count Five charges that between August 19, 2003 and October 2, 2003, Mr. Eyong caused to be presented visa applications to the Consular Section of the U.S. Embassy in Yaounde, Cameroon with false information contained therein. Count Six charges that between August 19 and September 17, 2003, Mr. Eyong caused to be presented false documents supporting the visa application on behalf of Valery Donfack to the Consular Section of the U.S. Embassy in Berlin. Counts Seven through Nine allege specific telephone facsimiles on May 5, 2003, August 26, 2003, and September 10, 2003, respectively, in support of an alleged scheme to defraud, the purpose of which was to obtain visas for individuals who would otherwise not have been eligible to receive such visas. As part of that scheme, the government alleges that Mr. Eyong appropriated and used congressional stationery and a signature stamp to invite non-U.S. citizens to a conference sponsored by the Congressional Black Caucus ("CBC") in Washington, D.C. The government also alleges that Mr. Eyong falsely represented in these facsimiles that the Congressman would be paying expenses for the travel to the United States.

Essentially, the indictment can be divided into counts relating to three categories of people. First, Counts One, Four, and Seven relate to an attempt to obtain a visa for Oben Eyong,[2] who was living in Germany, to attend (the defendant) Mr. Eyong's college graduation ceremony at the University of Maryland. Counts Three, Six, and Nine relate to a visa issued to Valery Donfack to attend the CBC conference, and Counts Two, Five, and Eight relate to visa applications for the nine people in Cameroon related to the CBC conference.

The government's allegations, based on the indictment, the discovery, and remarks it has made in court, are apparently that Mr. Eyong was attempting to obtain visas for Oben, Mr. Donfack, and the nine others, and that they would then attempt to remain, apparently by asylum petitions, in the United States instead of returning. The charges involving Mr. Donfack and the nine others relate to the CBC conference, while the charges related to Oben relate to Mr. Eyong's college graduation ceremony.

## DISCUSSION

I.  **THE RULE**

Rule 15 provides, in relevant part:

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice.

* * *

**(b) Notice.**

> **(1) In General**. A party seeking to take a deposition must give every other party reasonable written notice of the deposition's date and location. The

---

[2] For convenience and to avoid confusion, Oben Eyong will be referred to by his first name in this pleading, and the defendant by "Mr. Eyong."

notice must state the name and address of each deponent. If requested by a party receiving the notice, the court may, for good cause, change the deposition's date or location.

\* \* \*

**(c) Defendant's Presence**.

\* \* \*

**(2) Defendant Not in Custody**. A defendant who is not in custody has the right upon request to be present at the deposition, subject to any conditions imposed by the court. If the government tenders the defendant's expenses as provided in Rule 15(d) but the defendant still fails to appear, the defendant – absent good cause – waives both the right to appear and any objection to the taking and use of the deposition based on that right.

**(d) Expenses**. If the deposition was requested by the government, the court may – or if the defendant is unable to bear the deposition expenses, the court must – order the government to pay:

**(1)** any reasonable travel and subsistence expenses of the defendant and the defendant's attorney to attend the deposition; and

**(2)** the costs of the deposition transcript.

**(e) Manner of Taking**. Unless these rules or a court order provides otherwise, a deposition must be taken and filed in the same manner as a deposition in a civil action, except that:

**(1)** A defendant may not be deposed without that defendant's consent.

**(2)** The scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial.

**(3)** The government must provide to the defendant or the defendant's attorney, for use at the deposition, any statement of the deponent in the government's possession to which the defendant would be entitled at trial.

**(f) Use as Evidence**. A party may use all or part of a deposition as provided by the Federal Rules of Evidence.

**(g) Objections**. A party objecting to deposition testimony or evidence must state the grounds for the objection during the deposition.

## II. THE WITNESSES

Mr. Eyong requests that the Court order the depositions of Oben Eyong, Valery Donfack, and Thompson Ndip. Descriptions of their testimony are as follows:

### a. Thompson Ndip

Thompson Ndip is a resident of Limbe, Cameroon and is an employee of the Cameroonian government. He is the elder brother of the now deceased Stephen Ndip. Stephen Ndip, a Cameroonian citizen, resided with Mr. Eyong in the United States in 2003. The defense will demonstrate at trial that Stephen Ndip altered the letters that were being sent out to invitees to the Congressional Black Caucus Conference on Africa, and using the altered templates, invited several of his friends from Cameroon to attend the Conference under the Congressman's signature. These altered letters are the letters referenced throughout the indictment and allegedly used to support the visa applications referred to in Counts Two, Three, Five and Six. Mr. Thompson Ndip will testify that his brother, Stephen, was a political activist in Cameroon who supported the separation of the English speaking portion of Cameroon from the French speaking side of Cameroon. As such, he was at odds with the very government that Mr. Thompson Ndip works for in Cameroon. Thompson is fearful of reprisal should his involvement in this case become known to his government. However, he has agreed to be deposed in a neighboring country such as Nigeria or Gabon, or in Cameroon if arrangements can be made that do not involve the presence of other individuals from Cameroon who he fears might report his involvement to the government of Cameroon. He does not want to travel to the United States for trial because he fears he would have to explain to his government why he was coming to the United States. He fears reprisal in his country upon his return. Thompson Ndip has information

material to the defense. He will testify that he received a phone call from Mr. Eyong. Mr. Eyong was upset because Stephen Ndip had changed the information contained in letters that were sent to the United States Embassy in Cameroon and Germany to invite individuals to a conference in the United States. Mr. Eyong advised Mr. Ndip that Mr. Eyong's supervisors at work were upset and that he was disappointed that Stephen had betrayed his trust.

Mr. Ndip will testify that after he received this call from Mr. Eyong, he called his brother Stephen immediately and left a message for him. When Stephen returned his call, he admitted to Thompson that what Mr. Eyong had told him was true. Stephen told Thompson that while he was in the Congressman's Office assisting Mr. Eyong in the processing of the invitations, he modified the letter and used it to invite several of his friends who were Cameroonian activists to the United States. Thompson Ndip was angry and ashamed of what his brother had done. He advised his brother to apologize to Mr. Eyong, and Thompson also called Mr. Eyong to express an apology on behalf of his family. Stephen Ndip later died in the United States as the result of a car accident.

### b. Valery Donfack

Valery Donfack is a citizen of Cameroon who resides in Germany. He is referred to by name in the indictment in Counts Three and Six. He is unwilling to travel to the United States to testify, in part because he is afraid that the United States government might take legal action against him. He is, however, willing to be deposed. His testimony is directly material to Counts Three, Six and Eight. He would testify that he was a friend of Stephen Ndip. Stephen Ndip invited him to attend the Congressional Black Caucus meeting. He never spoke with or met Mr. Eyong until he arrived in the United States. He would also testify that he never made any efforts

6

to stay in the United States when he arrived, and had no intent to do so, but in fact returned to Germany when his visit concluded.

### c. Oben Eyong

Oben Eyong is a citizen of Cameroon who resides in Germany. He is referred to by name in the indictment in Counts One and Four. He is the brother of Njock Eyong. He is unwilling to travel to the United States to testify, in part because he is afraid that the United States might take legal action against him. He is, however, willing to be deposed. His testimony is directly material to Counts One, Four, and Seven. He would testify that his brother told him he would try to get him a visa to attend his graduation ceremony. He would also testify that although Mr. Eyong wanted Oben to attend the graduation ceremony, he never had any intention to seek asylum in the United States or to remain beyond the time requested in the visa application. He left his brother a message saying that the visa application was denied, and that was the last Oben heard of it until after the graduation was over.

## III.     THE LAW

The purpose of Rule 15 is to preserve testimony for trial, and it is thus appropriately used to depose one's own witnesses who may be unavailable for trial, rather than to obtain discovery from adverse witnesses. While live testimony is preferable in a criminal trial, the rule recognizes that exceptional circumstances may exist which warrant the taking of a videotaped deposition. It is generally accepted that depositions of foreign nationals who are unable or unwilling to come to the United States to testify, and who have relevant testimony to offer should be allowed. United States v. Sensi, 879 F.2d 888 (D.C. Cir. 1989); United States v. Farfan-Carreon, 935 F.2d 678,

680 (9th Cir. 1991); United States v. Tamura, 694 F.2d 591, 600 (9th Cir. 1982); United States v. Sines, 761 F.2d 1434 (9th Cir. 1985).

The standard for deposing a foreign national is not whether his or her testimony will result in acquittal, but whether it appears the anticipated testimony is material. See United States v. Bronston, 321 F. Supp. 1269, 1271 (S.D.N.Y. 1971); United States v. Hagedorn, 253 F. Supp. 969, 971 (S.D.N.Y. 1966). In United States v. Moon, the court granted the defendant's request to depose 120 witnesses who purportedly contributed to a fund which the defendant contended supported some of the deposits made to Moon's accounts. Moon, 93 F.R.D. 558, 559 (S.D.N.Y. 1982). The government alleged that the fund was fraudulently created and that monies were not collected as claimed or disbursed as described in the fund's ledgers. Id. Thus, although the proposed evidence from the witnesses to be deposed "would not refute the Government's principle point concerning disbursements, it could rebut the inference that the entire ledger was fabricated." Id. As result, the Court ordered the depositions could proceed, finding that the court could not "at this juncture in the case, say that the evidence would be immaterial." Id. When the question of whether to permit the deposition is a close one, the Court should err on the side of allowing the deposition to preserve the testimony and leave until trial the determination of whether to admit the deposition. United States v. Mann, 590 F.2d 361, 366 (1st Cir. 1978).

The D.C. Circuit has stated that factors to be considered in determining whether to order the taking of a deposition include the materiality of the testimony, the unavailability of the witness to testify at trial, and "typically some showing . . . that the evidence exculpates the defendant." United States v. Kelley, 36 F.3d 1118, 1125 (D.C. Cir. 1994). As discussed below,

all of these factors are met for each of the witnesses we seek to depose. Notably, there is no requirement that a defendant demonstrate conclusively that his witnesses are unavailable to testify at trial. Prior to the 1975 amendments to the rule, a party would have to demonstrate that a witness is unavailable to testify at trial. Now, unavailability is one consideration, but there is no requirement that a party demonstrate conclusively that the witness will be unavailable. See United States v. Johnson, 752 F.2d 206, 209 (6th Cir. 1985)("ability of the witness to be present at trial does not preclude taking depositions under Rule 15"); United States v. Mann, 590 F.2d 361, 366 n. 5 (1st Cir. 1978). United States v. Sines, 761 F.2d 1434, 1439 (9th Cir. 1985).

Nevertheless, the witnesses Mr. Eyong seeks to depose are unavailable because they are not citizens of the United States, and are unwilling or unable to come to the United States – they are "beyond the subpoena power of the court, and could not be compelled to appear." United States v. Farfan-Carreon, 935 F.2d 678 at 680. These witnesses have represented to counsel that they are unable to come to the United States even if the Court pays their expenses. Indeed, Oben and Mr. Donfack are apparently charged with being complicit in the counts relating to them, and have a legitimate fear that they might be subject to arrest and prosecution if they came to the United States to testify on Mr. Eyong's behalf.

It is clear under the circumstances set forth above that Mr. Eyong has shown the exceptional circumstances to justify taking the depositions of all three witnesses under the D.C. Circuit's test in Kelley. Some courts have referred to a three-factor test on whether to allow depositions:

> whether (1) the witness is *unavailable* to testify at trial; (2) injustice will result because testimony *material* to the movant's case will be absent; and (3) *countervailing factors* render taking the deposition unjust to the nonmoving party.

9

United States v. Ramos, 45 F.3d 1519, 1522-23 (11th Cir. 1995) (emphasis in original) (citing United States v. Drogoul, 1 F.3d 1546, 1554 (11th Cir. 1993)).  Even using this test, all three factors are satisfied in the present case.[3]  The showing of unavailability "need not be conclusive before a deposition can be taken."  Drogoul, 1 F.3d at 1553.  Unavailability under Rule 15 is established "whenever a substantial likelihood exists that the proposed deponent will not testify at trial."  Id.

All three of the witnesses in the present case are unavailable under this standard.  Each one is an "unservable deponent who is unlikely to return to the United States."  United States v. Dillman, 15 F.3d 384, 389 (5th Cir. 1994).  Each is "beyond the subpoena powers of the United States and has declared his unwillingness to testify at trial, or having declared willingness to testify cannot be subpoenaed if he changes his mind."  Ramos, 45 F.3d at 1523.  Indeed, Oben and Mr. Donfack are viewed by the government as being complicit in the fraud, and are, therefore, especially unlikely to voluntarily come to the United States.

There can be no question that the testimony of the three witnesses is material.  Thompson Ndip establishes that the alterations to the letters regarding the CBC conference were sent out without defendant's knowledge, that defendant confronted Stephen Ndip about the matter, and that Stephen Ndip admitted sending the altered letters out without Mr. Eyong's knowledge.  It is hard "to imagine testimony more critical to this case."  Drogoul, 1 F.3d at 1554.

The same applies to the testimony of Mr. Donfack and Oben – both of whom are specifically named in the indictment.  Mr. Donfack will testify that he was invited to the United

---

[3] A Rule 15 motion need not be "supported by an affidavit."  Farfan-Carreon, 935 F.2d at 680. Counsel's representations, such as set forth in this motion, are sufficient.  Id.

States by Stephen Ndip, that Mr. Donfack did not know Mr. Eyong before coming to the United States, that there was no plan for him to seek asylum, and that he returned to Germany as scheduled.

Oben would testify that his brother invited Oben to Mr. Eyong's college graduation, that would have been the sole purpose of the trip, that he had no intention to seek asylum, and that he heard nothing further after leaving a message for Mr. Eyong that the visa was denied.

Finally, there are no countervailing factors that make the depositions unjust to the government. Even safety of an Assistant United States Attorney has been held to be insufficient to render a deposition unjust. Ramos, 45 F.3d at 1524. "When a substantial likelihood exists that the prospective deponents will be unavailable for trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony." Drogoul, 1 F.3d at 1556. The testimony is "highly material to this case," and the depositions should be ordered so that Mr. Eyong "may have a fair opportunity to [defend] this case." Id. at 1553, 1558.

## IV.     THE PROCEDURES

Pursuant to Rule 15(d), the government must pay the costs of the transcript and the travel and subsistence expenses of Mr. Eyong and his attorneys to attend the depositions. The Advisory Committee notes to the 2002 amendments to Rule 15 make this explicit:

> If the defendant is unable to pay the deposition expenses, the court *must* order the government to pay reasonable subsistence and travel expenses and the deposition transcript costs – regardless of who requested the deposition. Although the current rule places no apparent limits on the amount of funds that should be reimbursed, the Committee believed that insertion of the word "reasonable" was consistent with current practice.

(Emphasis in original).

Defense counsel has contacted the State Department and it appears that arrangements can be made to take the depositions of Oben and Mr. Donfack in a country relatively close to Germany, and to take Mr. Ndip's deposition in Cameroon or a neighboring country. If the Court orders the depositions, defendant assumes the details of the times and places can be worked out in mutual agreement with the government.

## CONCLUSION

Mr. Eyong has demonstrated that the testimony of Thompson Ndip of Cameroon, Valery Donfack of Hanover, Germany, and Oben Eyong of Berlin, Germany, is sufficiently necessary to warrant a finding of exceptional circumstances under Rule 15. Each of these witnesses has been interviewed by defense counsel, has relevant information to offer, is willing to be deposed, and is unwilling or unable to come to the United States for trial. Thus, the Court should order the depositions to proceed to preserve their testimony for trial.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MICHELLE PETERSON
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Cr. No. 06-305 (JDB) |
| | : |
| **NJOCK EYONG,** | : |
| | : |
| **Defendant.** | : |

**ORDER**

It is this _____ day of May, 2007, hereby ORDERED that the defendant's motion to take foreign depositions pursuant to Rule 15 is GRANTED.

It is further ORDERED that the parties shall confer and agree upon the dates and procedures to be used and shall submit a joint proposed order.

_____
THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

DATE: