UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Cr. No. 06-305 (JDB) |
| : | |
| NJOCK EYONG, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S
MOTION IN LIMINE TO INTRODUCE 404(b) EVIDENCE**

**INTRODUCTION**

"It is fundamental to American jurisprudence that [Mr. Eyong] 'must be tried for what he did, not for who he is.'" *United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) (quoting *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977)).

\*\*\*

The government has dramatically overreached in its efforts to try Mr. Eyong not just for the crimes charged, but for all the other "bad acts" the government believes he has committed. While these other allegations may allow the government to argue that the charged conduct is somehow more serious than it appears, they are irrelevant, and they substantially increase the risk of distracting and prejudicing the jury. Moreover, the breadth of the government's proposed 404(b) evidence carries the very real risk that the case will spiral into a series of trials within a trial. The use of the proposed evidence would require that defense counsel return to Cameroon to interview other witnesses and delve deeply into the asylum process. This will likely significantly delay the current trial date.

**FACTS**

The government has charged Mr. Eyong in a nine-count indictment with false personation of a federal official, fraud and misuse of visas or other documents, and fraud by wire scheme. Essentially, the government alleges that Mr. Eyong pretended to be Congressman Payne to invite individuals to come to the United States and caused those invitations to be presented to embassy officials in support of visa applications. Essentially, the indictment can be divided into counts relating to three categories of people. First, Counts One, Four, and Seven relate to an attempt to obtain a visa for Oben Eyong, who was living in Germany, to attend (the defendant) Mr. Eyong's college graduation ceremony at the University of Maryland. Counts Three, Six, and Nine relate to a visa issued to Valery Donfack to attend the Congressional Black Caucus ("CBC") conference, and Counts Two, Five, and Eight relate to visa applications for the nine people in Cameroon related to the CBC conference. Counts Seven through Nine allege specific telephone facsimiles on May 5, 2003, August 26, 2003, and September 10, 2003, respectively, in support of an alleged scheme to defraud, the purpose of which was to obtain visas for individuals who would otherwise not have been eligible to receive such visas. As part of that scheme, the government alleges that Mr. Eyong appropriated and used congressional stationery and a signature stamp to invite non-U.S. citizens to a conference sponsored by the CBC in Washington, D.C. The government also alleges that Mr. Eyong falsely represented in these facsimiles that the Congressman would be paying expenses for the travel to the United States.

In the superceding indictment, the government has speculated that Mr. Eyong was attempting to obtain visas for Oben Eyong, Mr. Donfack, and the nine others, and that they would then attempt to remain, apparently by filing asylum petitions, in the United States instead

of returning to Cameroon or Germany. This is an allegation that was not contained in the initial indictment, and it appears that the government added this allegation to bolster its efforts to introduce evidence of other crimes. The government proposes to introduce evidence that Mr. Eyong "filed false, fraudulent and perjurious affidavits in support of his own asylum application in the United States, and in support of the application of others." Additionally, the government seeks to introduce evidence that Mr. Eyong "entered the United States illegally, in 1999 . . . [and] requested asylum in the United States, using false information on his application and forged, false, and fraudulent documentation." *Gov't Motion at 3 - 4*. The government seeks to introduce the 404(b) evidence to support its speculation on Mr. Eyong's motives because it has no other evidence of any such motive. In fact, the evidence (as described in the defendant's motion to take foreign depositions) is to the contrary. The government's motion gives no indication of how it intends to prove any of its 404(b) evidence.

## DISCUSSION

**I.     THE LEGAL STANDARDS**

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Prior acts of the defendant are admissible "only if they are (1) relevant to an issue other than character, (2) necessary, and (3) reliable." *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988); *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997). Even if the evidence is relevant, necessary, and reliable, it should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Rawle*, 845 F.2d at 1247; *Queen*, 132 F.3d at 995.

The government bears the burden of showing the relevance of evidence it seeks to have admitted under Rule 404(b). *See, e.g., United States v. Hudson*, 843 F.2d 1062, 1066 (7th Cir. 1988); *United States v. Hogue*, 827 F.2d 660, 662 (10th Cir. 1987). Therefore, "[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *United States v. McMillon*, 14 F.3d 948, 954 (4th Cir.1994) (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). To be probative of a material issue and thus relevant, a prior or subsequent bad act must be sufficiently related to the charged offense. *See Rawle*, 845 F.2d at 1247 n.3.

Reciting the litany of purposes in 404(b), however, is not enough. *See United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992). The government must "clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the other acts] before, he therefore is more likely to have committed this one." *Id.* at 887. Moreover, it is well established that evidence offered to show intent pursuant to Rule 404(b) is not admissible when "the unrelated bad act is 'tenuous and remote in time from the charges in the indictment.'" *United States v. Hernandez*, 975 F.2d 1035, 1039 (4th Cir. 1992) (citations and internal quotation marks omitted). Prior acts must be "similar in nature" and "occur[] in close proximity to each other." *United States v. Abboud*, 438 F.3d 554, 582 (6th Cir. 2006).

In addition to relevance, the government must demonstrate that its evidence of other bad acts is necessary and reliable. "Evidence is necessary where, considered in the light of other

4

evidence available to the government, it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." *Queen*, 132 F.3d at 998 (internal quotations omitted). Evidence of other bad acts is reliable only if the government offers sufficient facts for a reasonable jury to find that Mr. Eyong committed the acts alleged. *See United States v. Van Metre*, 150 F.3d 339, 350 (4th Cir. 1998) (noting that evidence is considered reliable if it is "sufficient to allow the jury to reasonably conclude that the act[s] occurred and that the defendant was the actor") (citations and internal quotation marks omitted); *see also United States v. Farber*, 630 F.2d 569, 571) (8th Cir. 1980) (noting that to be admissible, 404(b) evidence must be "clear and convincing").

Finally, even if evidence would otherwise be admissible under Rule 404(b), it may not be admitted "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. Rule 403; *see also United States v. Rhodes*, 886 F.2d 375, 380 (D.C. Cir. 1990).

## II.   THE PRESENT CASE

The government states in conclusory terms that the evidence it seeks to admit is either intertwined with the charged offense or "is relevant to establish the knowledge, intent, motive, and *modus operandi* of the defendant's actions." *Govt. Motion at 6*. It is plainly insufficient to rely on such a rote recitation of the various ways in which evidence of "other bad acts" might be relevant. *See United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985) (the government's mere statement that the purpose of the other acts evidence is "to prove the defendant's knowledge, identity and absence of mistake or accident" does not articulate "the relevant purpose

5

and specific inferences to be drawn from . . . [the] evidence of other acts"); *United States v. Harvey*, 845 F.2d 760, 762 (8th Cir. 1988) (government must specify which components of the rule form the basis of the relevancy of the other acts evidence and why); *United States v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985) (government "must precisely articulate the evidential hypothesis by which a fact of consequence may be inferred from other acts evidence."); *cf. United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982) (noting that the Court of Appeals "require[s] more of the trial court than a mechanical recitation of the factors of probative value and prejudice") (internal quotation omitted).

The government's notice fails in all respects. The proffered evidence is not relevant to the issues at trial and does not address any element of the offense. The alleged prior acts are not sufficiently similar in nature to be relevant. *United States v. Weiler*, 385 F.2d 63, 68 (3d Cir. 1967) (in prosecution for willfully making false statement in application for gun license, evidence of lie to agent regarding address not sufficiently similar to demonstrate willfulness).

The evidence also fails the *Huddleston* reliability prong. There is no evidence that Oben Eyong, Valery Donfack or anyone else intended to stay in the United States. In fact, the evidence is to the contrary. Mr. Donfack travelled to the United States and then returned to Germany. Oben Eyong remains in Germany. It is well settled that before evidence of "other bad acts" can be admitted, the government must point to facts sufficient for the jury reasonably to conclude that "the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689. No such facts have been offered here.

Nor does the government explain why the proposed evidence is necessary or assess the impact of such evidence on the length or complexity of the trial. The evidence is simply not

relevant or necessary.  The evidence the government seeks to introduce is unvarnished character evidence – precisely the type of evidence 404(b) is meant to exclude.  See Michelson, 355 U.S. at 475-76.  *United States v. Bibo-Rodriguez*, 922 F.2d 1398 (9th Cir. 1991) (subsequent conduct can be used to demonstrate earlier knowledge when it was substantially similar**)**.  *Id*. at 1402. The numerous defects in the government's notice suggest that the government seeks to do here exactly what is proscribed under Rule 404(b) -- use evidence of "other crimes, wrongs, or acts" to "prove the character" of Mr. Eyong  "in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  This motive is even clear in the way the government presents the reasons why it should be allowed to admit the evidence: "[g]iven the defendant's lengthy participation in immigration fraud, it would be reasonable for the jury to conclude" that Mr. Eyong committed the charged acts.  *Gov't Motion at 8*.

     But even if the government were able to offer a proper purpose for the admission of the evidence described in its notice, the Court would have to determine whether, under Rule 403, the probative value of each type of evidence is substantially outweighed by the risk of prejudice to Mr. Eyong.  *See United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) (even when evidence is relevant to intent, court must "determine whether such evidence, in the context of a given case, is more substantially prejudicial than probative").  Here, the proffered 404b evidence is unfairly prejudicial and will side-track the trial.   This is not a trial about whether or not Mr. Eyong entered this country validly.  This is not a trial about whether the government of Cameroon persecutes its citizens.  This is not a trial about whether Mr. Eyong helped others win asylum petitions.  Rather, this is a trial about whether Mr. Eyong falsely impersonated Congressman Payne.

Much of what the government seeks to introduce is evidence that Mr. Eyong is not a truthful person. That evidence, including the opinion of an immigration judge on Mr. Eyong's credibility is simply not relevant to the instant charges and is very prejudicial.

In addition to failing to sufficiently explain the probative value of the proffered evidence, the government has failed to address Rule 403 in any meaningful way. The balancing test of Rule 403 requires weighing the prejudice of each of the prior acts separately and together. And in conducting the analysis, courts are reluctant to admit evidence of bad acts that are "tenuous and remote in time from the charges in the indictment." *Hernandez*, 975 F.2d at 1039 (internal quotation marks omitted); *see also, e.g.*, *Abboud,* 438 F.3d at 582 (prior acts must be "similar in nature" and "in close proximity to each other"). The proffered evidence here fails the Rule 403 balancing test. The government's theory on Mr. Eyong's motivation for doing what he is alleged to have done is bald speculation. The prejudicial nature of the evidence is obvious – it paints the defendant as a liar. But however interesting character evidence may be, it is still inadmissible. *Michelson v. United States*, 355 U.S. 469, 475-76 (1988) (character evidence "is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge").

The government has put forth three categories of evidence it apparently intends to introduce. The first relates to Mr. Eyong's own asylum application. The second relates to a finding by an immigration judge about Mr. Eyong's credibility. The third, and final, relates to supposed false statements Mr. Eyong has made in affidavits. The government gives no indication of how it intends to prove any of these items.

8

As an initial matter, none of the evidence is relevant. Whatever Mr. Eyong said in his own asylum application has no relevance whatsoever to the charges in the present case. The same rationale applies to the immigration judge's finding and other asylum applications. They are nothing other than propensity evidence attempting to show that defendant is dishonest. Finally, even if the evidence was somehow marginally relevant, which it is not, it should be excluded because it is unduly prejudicial and would prolong the trial exponentially.

While Mr. Eyong does not know how the government proposes to prove its 404(b) evidence, because the government gives no such details, the immigration judge's finding is inadmissible hearsay. As the court in *United States v. Sine*, No. 05-10575, 2007 WL 1247043 (9th Cir. May 1, 2007), recently explained:

> A court judgment is hearsay "to the extent that it is offered to prove the truth of the matters asserted in the judgment." *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004), *cert. denied* — U.S. —, 126 S.Ct. 337, 163 L.Ed.2d 49 (2005); *see also* 2 MCCORMICK ON EVIDENCE, *supra*, § 298, at 337 (noting the historic treatment of prior judgments as hearsay). It is even more plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay. The concern about evidence that is neither based on personal knowledge nor subject to cross-examination, which explains an ultimate judgment's treatment as hearsay, *see* Motomura, *supra*, at 980 n. 4, is even more pronounced when dealing with statements that recapitulate in detail others' testimony and declarations. We therefore agree with the Fourth, Tenth, and Eleventh Circuits that judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists. *Herrick v. Garvey*, 298 F.3d 1184, 1191-92 (10th Cir. 2002); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper*, 7 F.3d at 417.

*Id.* at *12. The court in *Sine* also held that such evidence was unfairly prejudicial because the prior judge's findings were the "negative assessment of Sine's overall credibility . . . that the government wanted the jury to hear." *Id.* That is precisely the situation in the present case.

9

Admitting the government's proposed evidence would also extend the trial, as the 404(b) evidence would take substantially longer to present than the case itself, which is more straightforward than the 404(b) evidence. It will also result in Mr. Eyong requesting a continuance because he had been led to believe that he did not need to investigate such allegations until some future time if charges were brought related to them.

Defense counsel traveled to Cameroon and Germany before the superseding indictment was brought. The only three people interviewed were the ones whose depositions defendant has requested be taken in his motion for depositions. Defendant believed it was unnecessary to attempt to interview other people because of statements the government made at the December 13, 2006, status hearing:

> I understand that what he's also sort of hinting at is that there were some discussions that we had about Mr. Eyong assisting others in some fraudulent claims of asylum, and if those claims would be brought, they wouldn't be brought immediately. That is something still under investigation, and that is something that there might be a second superseding indictment if we were to bring those charges. It wouldn't be soon.
>
> And I understand and I agree that I should discuss this further so that were there a trip to Cameroon, then there wouldn't need to be a second trip based on that theory of prosecution. But it has entered into our discussions, and if that's what's concerning Mr. Kramer at this time, I will have those discussions with him not before the Court.

Transcript of December 13, 2006, pp. 9-10.

Based on these representations, defendant did not attempt to interview witnesses related to any other alleged false claims. Now, however, the government is apparently trying to introduce such evidence under Rule 404(b). This will require another trip to Cameroon and, possibly, Germany for investigation, and likely a motion for additional depositions.

## CONCLUSION

The prior and subsequent acts evidence which the government proposes to introduce pursuant to Rule 404(b) is irrelevant to the charges in the present case, and should be excluded, and is being presented solely for the improper purpose of propensity evidence. Even it is some marginally relevant, its admission would be severely prejudicial and would in all likelihood confuse and mislead the jury. The potential for jury confusion here is substantial because the jury will have difficulty keeping the facts of each offense separate and distinguishing the charges against Mr. Eyong from all the other evidence they have heard. Moreover, the evidence will cause jury confusion because the jury will first have to determine whether each of the alleged prior acts actually occurred before using that evidence as part of their deliberations regarding this case. This series of exercises is sure to confuse the jury. The introduction of this evidence will also result in several mini-trials within the trial, causing needless delay. Finally, it will also substantially prolong the trial, and will result in defendant requesting a further continuance to be able to properly address the allegations. The evidence should be excluded.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MICHELLE PETERSON
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Cr. No. 06-305 (JDB) |
| | : | |
| **NJOCK EYONG,** | : | |
| | : | |
| **Defendant.** | : | |

**ORDER**

It is this ____ day of May, 2007, hereby ORDERED that the Defendant's Opposition To The Government's Motion In Limine To Introduce 404(b) Evidence is GRANTED.

_____
THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

DATE:  May ___, 2007