**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No: 06-305 (JDB)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **NJOCK EYONG,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TAKE FOREIGN DEPOSITIONS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds in opposition[1] to the defendant's motion to take foreign depositions pursuant to Rule 15, Fed. R. Crim. P., and states as follows:

### Background

1. The defendant is charged with false personation of United States Congressman Donald Payne of New Jersey (his prior employer), fraud and misuse of immigration documents, wire fraud, and aiding and abetting those offenses. He is alleged to have

---

[1] The government only opposes the taking of one of the proposed Rule 15 depositions. It does not oppose taking the depositions of Valery Donfack or Oben Tabi Eyong, except to the extent that the defendant has provided no details, as he is required, regarding "date and location" (*see* Rule 15(b)(1), Fed.R.Crim.P.), proposed expenses (*see* Rule 15(e)), and the representation of the witnesses, given the defendant's assertion that they are only unavailable because they fear "that the United States government might take legal action" against them (*see* Defendant's Motion at 6, 7). This position was communicated to defense counsel on Friday, May 4, 2007, and in two telephone conferences on Tuesday, May 8, 2007.

-2-

used the official stationery and facsimile-signature of
Congressman Payne as part of his demand that consular officials
in Berlin and Frankfurt, Germany, and Yaounde, Cameroon issue
immigration documents to various specific individuals from his
native country, Cameroon.  His apparent defense is that a friend
who he had invited to the Congressman's office to help him
complete his work sent the letters without his knowledge.  The
friend, whose name was Stephen Ndip, is now dead.

2.  This apparent defense is similar to one given to State
Department investigators on February 1, 2006, in a non-custodial
interview of the defendant.  In the earlier statement, however,
the defendant said that he (Eyong) had been asked to invite
"dignitaries" to a meeting of the Congressional Black Caucus
("CBC"), and that he "told Stephen to write the names of the
people he wanted to invite."  *See* Memorandum of Special Agents
Philippe Furstenberg and Stacy Burrows, dated February 1, 2006,
at page 2 (hereafter referred to as "Defendant's Statement").  In
the taking of that statement, the defendant was shown the
August 19, 2003 letter "inviting" nine (9) Cameroonians to the
meeting of the CBC (*see* Counts 2, 5, and 9) and the August 27,
2003 letter to the United States Embassy in Yaounde, recommending
that visas be granted (*id.*).  In his statement, the defendant
said that both "may have been" written by Mr. Ndip.  *See*
Defendant's Statement at 2.

-3-

3.  The defendant has admitted (and his proffer of the
testimony he seeks to preserve by deposition does not appear to
dispute these admissions):  a) that he (the defendant) gave
Stephen access to a "form letter" in the Congressman's office;
b) that he (the defendant) told Stephen where to find the
Congressman's signature stamp; c) that he (the defendant) faxed
the letters to the embassies; and d) that he (the defendant)
followed up with telephone calls to the embassies to inquire why
the visas had not been granted.

4.  For the defendant to now claim that instead, he had <u>no</u>
knowledge of the letters, Stephen Ndip would have to be
responsible not only for the letters, but also for the faxes and
telephone calls, which would require that Mr. Ndip was at work
with the defendant on August 19, 26 and 27, and on September 10
and 17, 2003, (all weekdays) when other members of the
Congressman's staff would have noticed.

5.  In pursuit of his defense that it was Stephen Ndip who
committed these crimes, the defendant now proposes to depose
three individuals:  a) Thompson Ndip, Stephen's brother, who
lives in Cameroon and works for the government; b) Valery
Donfack, who resides in Germany and is the subject of the
August 19, 2003 letter to the U.S. Embassy in Frankfurt; and
c) Oben Tabi Eyong, who claims he's the defendant's brother and
is the subject of the May 6, 2003 letter, presented in Berlin.

-4-

**ARGUMENT**

As set forth above, the government opposes the request for a deposition of Thompson Ndip, and believes that the defendant has not met his burden with respect to the depositions of Donfack and Oben Eyong.  We ask that the Court not Order that they occur.

### A.  **Depositions in criminal cases are disfavored**

1.  The law is very clear that the taking of depositions in criminal cases is disfavored. United States v. Drogoul. 1 F.3d 1546, 1551 (11th Cir. 1993) (Tjoflat, J.); United States v. Milian-Rodriguez, 828 F.2d 679, 686 (11th Cir. 1987), *cert. denied,* 486 U.S. 1054 (1988); United States v. Ismaili, 828 F.2d 153, 159 (3d Cir. 1987); United States v. Hajbeh, 284 F. Supp. 380, 382 (E.D. Va. 2003).  It is the burden of the moving party, to establish "exceptional circumstances" justifying the taking of a Rule 15 deposition, Drogoul, *supra*, 1 F.3d at 1552; United States v. Fuentes-Galindo, 929 F.2d 1507, 1510 (10th Cir. 1991), and that the testimony he seeks to preserve is material, Ismaili, *supra*, 828 F.2d at 158; United States v. Rosenstein, 474 F.2d 705 (2d Cir. 1973).[2]

---

[2]    It is also the defendant's burden to demonstrate that the witnesses are unavailable; however, the government does not contest the defendant's suggestion that the witnesses are unwilling to appear in the United States.  Indeed, for reasons consistent with the facts of this case, the government did not then and does not now choose to admit the witnesses into the United States and it agrees with the defendant's assessment that the witnesses have well-founded fears of prosecution for their

(continued...)

-5-

2.  The District of Columbia Circuit not only requires that the moving party demonstrate materiality of the testimony and unavailability of the witness, but it notes that "there is typically some showing beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant."  United States v. Kelley, 36 F.3d 1118, 1125 (D.C. Cir. 1994); *citing* Guam v. Ngirangas, 806 F.2d 895, 897 (9th Cir. 1986).

3.  The justification for taking depositions, plainly stated, is to avoid an injustice.  "[O]rdinarily, exceptional circumstances exist within the meaning of Rule 15(a) when the prospective deponent is unavailable for trial and the absence of his or her testimony *would result in an injustice,*" Drogoul, *supra*, 1 F.3d at 1552 (emphasis added); Hajbeh, *supra*, 284 F. Supp. at 382, or a "failure of justice," United States v. Cohen, 260 F.3d 68, 78 (2d Cir. 2001); Fuentes-Galindo, *supra*, 929 F.2d at 1509.  There can be no "failure of justice" where the information the defendant seeks to "preserve" is unreliable and inadmissible, because it would not be presented to a jury in any event.

4.  Here, the defendant has not met his burden.  As set

---

[2](...continued)
activities in this matter and perhaps, for testimony they may offer, if consistent with the defendant's proffer.

In any event, the parties appear to agree that the witnesses are indeed unavailable.

-6-

forth below, the proffered testimony of Thompson Ndip is patently inadmissible and as such, its preservation cannot be considered material to the defense.  Since the testimony would not, under any circumstances, be admitted at trial, it need not be preserved.  "The court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial."  Drogoul, *supra*, 1 F.3d at 1555.

    5.  With respect to the testimony of Valery Donfack and Oben Tabi Eyong, the government does not oppose the taking of depositions -- indeed, the government welcomes the opportunity to question these individuals -- however, the government asserts respectfully that the defendant has not set forth sufficient information or assurances that should require this Court to order such an extraordinary undertaking.


    **B.  The defendant has not met his burden of establishing "exceptional circumstances" or that "the interest of justice" requires taking the deposition of Thompson Ndip**

    The defendant first proposes to take the deposition of Thompson Ndip (hereafter referred to as "Thompson"), brother of Stephen Ndip (hereafter referred to as "Stephen").  He proffers that Thompson would testify to two events: 1) that on an unspecified date the defendant made self-serving denials to him; and 2) that on another unspecified date, Stephen stated that he

-7-

"modified" letters sent from Congressman's Payne's office, to invite "several of his friends" to the United States (*see* Defendant's Motion at 6). Because none of this testimony would be admissible at trial, the government asserts that the request for this deposition is without merit.

1. <u>The defendant's self-serving statements</u>: The defendant offers no theory for the admission of these statements, nor can he. The defendant cannot call a witness to offer his own prior, self-serving hearsay statement, accusing someone else of committing the crimes with which he is charged. Even if the Court were inclined to permit it, it would be cumulative of the statement the defendant gave to law enforcement, in which he blamed Stephen for participating in the personation of Congressman Payne.

2. <u>Stephen's alleged statements to his brother</u>: Similarly, Stephen's alleged statements to his brother are hearsay. The only conceivable hearsay exception the defendant might claim with respect to this statement is that it is a statement against penal interest, under FRE 804(b)(3), but even that argument must fail. Under FRE 804(b)(3), the following is not hearsay:

> A statement which was at the time of its making so far contrary to the declarant's peculiary or porprietary interest, or so far tended to subject the declarant to civil or criminal liability, . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. <u>A statement tending to expose</u>

-8-

<u>the declarant to criminal liability and
offered to exculpate the accused is not
admissible unless corroborating circumstances
clearly indicate the trustworthiness of the
statement</u>.

FRE 804(b)(3) (emphasis supplied).  The reason for requiring

<u>clear</u> corroborating circumstances is obvious, as the Advisory

Committee recognized "a distrust of evidence of confessions by

third persons offered to exculpate the accused arising from

suspicions of fabrication either of the fact of the making of the

confession or in its contents, enhanced in either instance by the

required unavailability of the declarant."  Advisory Committee

Notes to the 1972 Enactment of FRE 804(b)(3).

    3.  Here, there are no corroborating circumstances and much

reason to distrust the so-called admission.  First, the content

of the statement is suspect; second, the manner in which the

testimony is offered does not provide confidence that the

testimony is true; and third, the statement as proffered is

insufficient to qualify under FRE 804(b)(3).

    a.  *Circumstances render the content of the statement

unreliable*:  In this case, Stephen is not merely unavailable, he

is dead.  So it is convenient for the defendant not only to blame

him for the commission of the crime, but to also claim that he

"confessed."  Both are unreliable.  Not only is Stephen unable to

refute the accusation, but the defendant also has an explanation

that spares anyone punishment.

-9-

Passing responsibility to a dead man is a very old defense, and no more reliable now than in ancient times.  This circumstance alone makes the proffered testimony unreliable.  And it is not the government's responsibility to demonstrate unreliability; rather, it is the defendant, as proponent of the statement, who bears the burden of showing "circumstances [that] <u>clearly</u> indicate trustworthiness."  *See* FRE 804(b)(3).

Moreover, the circumstances of this case make it unlikely that such a confession would be true.  Not one person has ever seen Stephen in Congressman Payne's office, much less having access to stationery, signature devices, fax machines and telephones, on the five (5) separate workdays during which these letters were created and faxed, and during which the follow-up telephone calls were made to the three embassies by someone named "Njock."  Furthermore, the individuals receiving the letters overseas would have had to believe that Stephen, a 28-year old illegal immigrant, had the ability and connections to get them an invitation from a United States Congressman, to the annual meeting of the Congressional Black Caucus.

The government agrees that the defendant had a roommate named Stephen Ndip.  It may even be true that the roommate helped select the individuals who would receive forged invitations to the United States.  But it cannot be corroborated that the roommate committed the crimes with which the defendant is charged

-10-

or that he confessed to his brother; no circumstances *clearly* indicate trustworthiness; and thus, it is unlikely that the statement was ever made.

b.  *Brother Thompson's report of the statement is suspect*: Not only is the content of the information suspect, so too is the manner in which brother Thompson and the defendant propose to present it.  First, and perhaps most significantly, the government notes that Stephen Ndip did not die in a car accident.[3]  If the brother has incorrectly reported the manner of death of an individual who he claims to be his brother, then the entirety of his information is suspect.

Second, Thompson proposes to give his account in secret, claiming that his country would somehow punish him for "his involvement in this case."  *See* Defendant's Motion at 5.  It is left unclear what "involvement" would subject him to reprisal in his country, or why coming to the United States to testify would cause him to "have to explain to his government" (*id.*) his conduct in these affairs any more than appearing at the United States Embassy for a secret (from his government) deposition might.  In any event, his desire to testify in secret is also highly suspect and unreliable.

---

[3]  The government is willing to proffer its evidence to the Court *ex parte* concerning the manner of death, but chooses not to provide any information to the defendant, at this time, to avoid further opportunity for him to tailor his "evidence."

-11-

And finally, it is not even remotely clear whether the testimony the defendant seeks, if taken in Cameroon secretly, or if taken in Nigeria or Gabon as he suggests, would be subject to any penalty for perjury.  If not, the witness can say anything with impunity.  He is likely to return to Cameroon, a country with which the United States has no extradition treaty, so it is unlikely that he would be subject to any sanction whatsoever, were he to give false testimony.  *See* United States v. Alvarez, 837 F.2d 1024, 1029 (11th Cir.), *cert. denied,* 486 U.S. 1026 (1988).

c.  *The statement itself does not fall within FRE 804(b)(3):* A telephone admission to a family member in a foreign country does not contain the indicia of reliability contemplated by FRE 804(b)(3).  *See* United States v. Peyton, 28 Fed. Appx. 655, 2002 WL 21927 (9th Cir. 2002).  To illustrate this point, let us suppose, for example, that Stephen had confessed to forgery to a law enforcement official in the United States.  In that case, one might say he was subjecting himself to criminal prosecution and would not have made the statement unless it were true.  This is not the case, here.

Here, we have the opposite extreme example.  That is to say, here, even accepting for the sake of argument that the proffered statement was made, we have one brother admitting to another brother in a foreign country that he "modified" a letter to

-12-

"invite several of his friends" to the United States, a statement that on its face doesn't even appear to be confession to a crime. The brother to whom he allegedly made the statement is not at all likely to pass it along to *anyone*, since (as the defendant stresses) he does not want his government (which is also his employer) to know of his connection to the United States or to his "activist" brother.  Under these circumstances, Stephen is hardly subjecting himself to anything whatsoever, except, perhaps, the disapproval of his brother.  Disapproval of a brother is not the basis for a hearsay exception.  FRE 804(b)(3) contemplates a statement that is reliable because the declarant believes it will subject him to criminal prosecution, such that he wouldn't make the statement, unless it were true.  That is not the case, here.  *Cf.* United States v. Fujii, 152 F. Supp. 2d 942, 948 (N.D. Ill. 2000) (corroboration requires "evidence that clearly indicates that the statements are worthy of belief, based upon the circumstances in which the statements were made") (emphasis in original), *quoting* United States v. Barone, 114 F.3d 1284, 1300 (1ˢᵗ Cir. 1997).

    4.  For all of the reasons set forth above, the defendant has not met his burden of demonstrating the "exceptional circumstances" requiring the extraordinary Order of a pre-trial deposition.  Because Thompson Ndip's proffered statement is not reliable nor admissible at trial, it need not be "preserved" in

-13-

any manner and the failure to do so could never constitute a
"failure of justice."

This Court's denial of the requested deposition is subject
to review for "abuse of discretion," and "a court does not abuse
its discretion where it denies a motion under Rule 15(a) because
'the evidence [is] in some respects irrelevant and in others
cumulative and possibly inadmissible as hearsay.'" United States
v. Feijoo-Tomala, 751 F. Supp. 40, 43 (E.D.N.Y. 1990), quoting
United States v. Hernandez-Escarsega, 886 F.2d 1560, 1569-70 (9th
Cir. 1989), cert. denied, 497 U.S. 103 (1990).  See also United
States v. Tolliver, 61 F.3d 1189, 1206 (5th Cir. 1995) (no abuse
of discretion where "there is no showing that, had the deposition
been taken, it would have been admissible at trial"); United
States v. Morales-Campos, 1992 WL 281035 *2 (E.D.N.Y. 1992) (in
deciding that the defendant has not met his burden of
establishing "exceptional circumstances," the court considers
"the fact that the evidence to be gained was potentially
inadmissible as hearsay").

    C.  Defendant has not met his burden with respect
    to the depositions of Valery Donfack and Oben Tabi Eyong

    While the government does not oppose in principle the taking
of the depositions of Valery Donfack and Oben Tabi Eyong, the
defendant must do more to assure the Court that appropriate
arrangements have been made, the depositions will occur, and the

-14-

expenses are known, before asking this Court to Order that they occur and that the Government bear the majority of the expense.[4]

First, despite the passage of more than six months since the defendant's arraignment before this Court, and two months since the Court set a motions schedule, the defendant has provided no details as to the location and time he proposes to take the depositions. The defendant does not appear to know whether the witnesses can make themselves available in third countries,[5] or whether if counseled, they would even agree to appear.

This last point is not insubstantial. When the government first inquired, counsel was assured that the witnesses would waive any rights necessary to complete the deposition. Upon further inquiry, however, the defendant's counsel merely assured the government that the witnesses would be willing to answer

---

[4]    Defendant cites the 2002 amendments to Rule 15(d) for the proposition that "the government" must bear the expenses of the depositions. Construing the rule strictly, the government must only bear "(1) any reasonable travel and subsistence expenses of the defendant and the defendant's attorney to attend the deposition; and (2) the costs of the deposition transcript." The government believes, therefore, that the defendant is responsible for the expenses of the witnesses, including their subsistence, travel, and translation services.

[5]    It is by no means certain that the German government will issue travel documents to Oben Tabi Eyong, since he claims that he "lost" a prior German travel document. The witness entered Germany in 1999, with forged papers that he purchased in Nigeria, so it is possible that German authorities might suspect that his prior German travel documents were illegally transferred to others, and might refuse to issue new papers. This information was provided to defense counsel on May 4, 2007.

-15-

*defense* questions.  No attempt has been made by the Federal
Defender (which in this jurisdiction is responsible for providing
counsel in conflict situations) to provide representation or
independent advice to the witnesses.  The Federal Defender has
advised that such an effort is not necessary nor contemplated,
despite the claim that the witnesses are unavailable for trial
because they fear prosecution.

The defendant cannot take this position.  It is his
responsibility to ensure -- before all the parties travel abroad
-- that the witnesses will appear and testify.  Again, it is the
defendant's *burden* to establish that the depositions are
necessary, that the circumstances requiring them are
"exceptional," that the witnesses are unavailable to appear at
trial, and that they *are* willing to appear for a deposition.  It
is simply inconceivable that the defendant would request an Order
from this Court without being able to provide the assurance that
the witnesses will appear and will subject themselves to a
complete deposition, including cross-examination, with a penalty
for perjury.

The request before the Court at this time is simply
insufficient.  The defendant has, in essence, requested a blank
check in the form of a Court Order, requiring that the government
make enormous commitments of time and financial resources.  He
must do more.

-16-

**CONCLUSION**

_____For the reasons set forth herein, the United States respectfully requests that the defendant's motion for foreign depositions be DENIED.

                         Respectfully submitted,

                         JEFFREY A. TAYLOR
                         UNITED STATES ATTORNEY
                         D.C. BAR # 498610

                              /s/

                 By:  _____
                         BARBARA E. KITTAY
                         D.C. Bar #414216
                         PRECIOUS MURCHISON
                         Maryland Bar
                         Assistant U.S. Attorneys
                         555 4th Street, N.W.
                         Washington, D.C. 20530
                         (202) 514-6940, (202) 307-6080
                         Barbara.Kittay@usdoj.gov
                         Precious.Murchison@usdoj.gov