```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    :   Criminal No:  06-305 (JDB)
                             :
                             :
          v.                 :
                             :
                             :
NJOCK EYONG,                 :
                             :
          Defendant.         :
                             :
```

**GOVERNMENT'S REPLY TO THE DEFENDANT'S OPPOSITION TO THE MOTION TO INTRODUCE EVIDENCE PURSUANT TO FED. R. EVID. 404(B)**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby replies to the defendant's opposition to its motion to introduce evidence at trial, pursuant to the Federal Rules of Evidence, Rule 404(b), and states as follows:

1. At the outset, we note that prior to counsel's foreign travel, the government provided the documents relating to asylum. *See* Letter and inventory dated February 7, 2007, attached hereto as "Exhibit A." In several telephone calls that same week, the government made special efforts to call counsels' attention to the documents and the significance of reviewing them in advance of their travels, specifically and explicitly so that counsel would not have to return to the countries they were planning to visit. There was no other reason for the government to provide

-2-

the materials.[1]

    2.   The affidavit the defendant prepared for Oben Tabi Eyong is *not* evidence of uncharged conduct; rather, it is direct proof of the visa fraud charged in counts 4 and 7.  As such, it is admissible in the government's case-in-chief.  The additional affidavits explain not only how this "Oben" document was created, but also how it was to be used, and in this way, provide context for documents, the immigration process, and the defendant's extensive and intimate knowledge of both.  Indeed, the "Oben" document was a cut-and-paste affidavit that had been used for many other individuals, created from one template.  But it is the variances in the documents that demonstrate the defendant's intent to defraud immigration authorities.

    3.   The defendant's suggestion to delay the trial is unwarranted.  Trial in this case is currently scheduled for September 17, 2007, which is *more than seven months* after the materials were provided and *more than four months* from the government's notice of intent to use them.  This is more than sufficient time for investigation.  This latest representation

---

[1] The only relevance of the material is plan, motive, and the absence of mistake or accident (FRE Rule 404(b)), *or* as material for cross-examination of the defendant, which as counsel well knows, is not discoverable and would not have been provided in advance of trial.  So even without the discussions between counsel, the very fact that the materials were provided at all alerted counsel to the government's intention to introduce them at trial.  The indignant tone of defendant's pleading is inappropriate, given the prior discussions of counsel.

-3-

that defendant's further investigation "will likely significantly delay the current trial date" (*see* Defendant's Opposition at 1) is a continuation of delay in this case, to which the government's opposition is of record.[2]  At first, the government cooperated with the defense, even agreeing to delay the return of a superseding indictment, so that the defendant's initial motion could continue to toll the computation of time allotted under the Speedy Trial Act.  But that was nearly six months ago.  The government and its witnesses are also entitled to a speedy trial, particularly where, as here, the defendant has continued his dishonest practices even after he knew he was going to be indicted, *see* In re Gideon Osei Eyong, Case #A 97-621-971 (heard in Baltimore, Maryland).

In the *Gideon Osei Eyong* case, the defendant's testimony was so outrageous that the presiding immigration judge included in her written opinion a section entitled "Broader Implications and Concerns," finding that "Njock's apparently perjured testimony and presentation of fabricated evidence . . . raises questions about the validity of his own asylum claim and those of the many

---

[2] The government has advised the Court of its concern that the defendant apparently intends to become a licensed attorney before he is forced to face the charges here.  This is just one of many reasons the government believes that it is in the public interest that the case proceed to trial without undue delay.  The Court has been very generous, providing six weeks to file motions and eleven months from arraignment to trial.  This is more than sufficient time for defense preparation.

-4-

others he appears to have assisted in the U.S. and Europe [and] about whether he possesses the requisite character to practice law in the U.S." (Opinion of Immigration Judge Elizabeth A. Kessler dated June 30, 2006, at page 12).

4. The defendant's claim that he has to return to Cameroon for further investigation is also without merit. If he is trying to say that he needs to interview the asylum applicants, these people are -- almost by definition -- here in the United States. Neither does the defendant need to investigate the various claims he has made through the years, since the affidavits contradict one another in significant ways. For example, in the affidavit submitted in support of the asylum applications of Gerald Ayuk Eyong (later modified in preparation for Oben Tabi Eyong) and of Gideon Osei Eyong, the defendant claims that he was a tortured political prisoner from December 1998 until November 1999. At the same time, in the affidavit submitted in support of the asylum application of Malik Jarno, defendant claims he was a "student attorney" for <u>Amnesty International</u> from June of 1998 until February 1999 and a "law clerk" for the <u>Supreme Court of Cameroon</u> from March 1999 until September 1999.

The investigation required of these affidavits is minimal: at least one of them is false.

5. The defendant claims that "this is a trial about whether Mr. Eyong falsely impersonated Congressman Payne" (*see*

-5-

Defendant's Opposition at 7).  That statement is inaccurate.  The defendant is well-aware that he is charged with a good deal more, including visa and wire fraud.  He evidently wishes to characterize his conduct as the harmless prank of taking a few sheets of stationery, but his darker motive and the charges against him involve a great deal more and the government is clearly entitled to prove it.

6.  Perhaps most significant in this regard is the defendant's explanation and apparent defense, professing complete ignorance and blaming a third party.  At the same time, he admits that he must have mistakenly or accidently made phone calls to the embassies abroad and faxed to them the forged letters, all without knowledge of the contents.  The government is entitled to prove absence of mistake or accident, knowledge and plan (*see* Rule 404(b)), with evidence of his long history and pattern of immigration fraud and abuse.  The defendant cannot have it both ways.  He cannot take the position that he inadvertently faxed a forged document, when he has spent months and years, before, during and after these events, using false information and misrepresentations to corrupt the immigration process.

7.  The government has been prompt and open in providing discovery, and candid and timely with respect to the information counsel needed for its foreign investigation.  The government has advised the defendant of his peril should he decide to testify in

-6-

his defense.[3]  But the defendant willfully ignores the immigration fraud charges, hoping to characterize his conduct as a silly prank, committed by a now-deceased friend.  The defendant persists in this myopic view of the charges at his own peril if he stubbornly avoids preparing for the full scope of the charges.  It is more likely, however, that the defendant's professed astonishment at the government's intention to use the evidence it provided long ago, is yet another attempt to delay the trial.

   8.  Defendant argues that he "'must be tried for what he did, not for who he is.'"  *See* Defendant's Opposition at page 1, *quoting* United States v. Foskey, 636 F.2d 517, 523 (D.C. Cir. 1980); United States v. Myers, 550 F.2d 1036, 1044 (5th Cir. 1977).  This might apply, except that the defendant says that "he is" the ignorant dupe of his now-dead friend, and that he never could have conceived of anything like immigration fraud, but for his unknowing, mistaken and accidental acts in support of his evil friend.  Proving state of mind through other, similar (not identical or signature) uncharged conduct is the very essence of Rule 404(b).  *See, e.g.,* United States v. Olson, 842 F.2d 1293 (4th Cir. 1988) (defendant argued that she was "the innocent victim of [a co-conspirator's] criminal machinations"; the

---

   [3]  At a minimum, the government has shared with the defendant a preview of the government's cross-examination of him, should he choose to testify in his own defense.  He is not entitled to a continuance to investigate cross-examination materials.

-7-

government was entitled, therefore, to prove through 404(b) evidence that the crimes "were not committed inadvertently, accidentally, unintentionally, or without guilty knowledge" and was not required to wait until the rebuttal stage of the trial). *See also* United States v. Vieth, 397 F.3d 615, 618 (8th Cir. 2005) (404(b) evidence is admissible to refute the defendant's claim that he was "merely present" at a drug transaction).

9. The defendant argues that the government's 404(b) evidence must be "necessary and reliable" (*see* Defendant's Opposition at 4, 5, 6, 11). The government anticipates that in many cases, it will present certified copies of the defendant's affidavits from the records of the immigration courts. Other affidavits were drafted by the defendant and recorded in his email accounts (which were obtained by the grand jury and will be subpoenaed for trial). The federal rule is one of *inclusion*, not exclusion; the evidence may be offered for any purpose, so long as the evidence is not offered solely to prove character. *See* United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc); United States v. Johnson, 802 F.2d 1459 (D.C. Cir. 1986). If the Court deems the evidence to be relevant, the Court should exclude the evidence only if its probative value "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978); *see also* Huddleston v. United States, 485 U.S. 681,

-8-

686 (1988).  In close cases, the rule tilts toward the admission of the other conduct evidence.  *See* United States v. Johnson, 802 F.2d at 1463-64 ("the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged") (*quoting* United States v. Day,  591 F.2d 861, 878 (D.C. Cir. 1978)).  The D.C. Circuit has recognized that "Rule 404(b) evidence will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation and the like."  United States v. Crowder, 141 F.3d at 1208.

    10.   The relevance of the defendant's immigration activities far outweighs any prejudice which might result.  *See* FRE Rule 403.  The charges in this case involve the personation of a United States Congressman, an activity that is far worse than misrepresenting one's own personal history.  Both were intended by the defendant to defraud, but the charged conduct here reflects a significant escalation of the lengths to which he would go to illegally bring individuals to the United States.  First the defendant said, for example, that he was a former clerk of the Cameroon Supreme Court; then he, in essence, said he was (and spoke for) a United States Congressman.  The latter is far more serious.  The prejudicial effect of the former, therefore, is outweighed by the probative value of demonstrating his knowledge, state of mind, and intent to defraud.

-9-

## CONCLUSION

    Application of the legal principles surrounding Rule 404(b) demonstrates that the proffered evidence is probative of relevant issues. For these reasons, the government respectfully requests that the Court find *in limine* that the evidence is admissible.

                          Respectfully submitted,

                          JEFFREY A. TAYLOR
                          UNITED STATES ATTORNEY
                          D.C. BAR # 498610

                          /s/

By:   _____
      BARBARA E. KITTAY
      D.C. Bar #414216
      PRECIOUS MURCHISON
      Member of the Maryland Bar
      Assistant U.S. Attorneys
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 514-6940, (202) 307-6080
      Barbara.Kittay@usdoj.gov
      Precious.Murchison@usdoj.gov