# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : **Cr. No. 06-305 (JDB)** | |
| | : | |
| **NJOCK EYONG,** | : | |
| | : | |
| **Defendant.** | : | |

---

## REPLY TO GOVERNMENT'S OPPOSITION TO
## DEFENDANT'S MOTION TO TAKE FOREIGN DEPOSITIONS

### INTRODUCTION

"*Few rights are more fundamental than that of an accused to present witnesses in his own defense.*" Chambers v. Mississippi, 410 U.S. 284, 302 (1973) (citing Webb v. Texas, 409 U.S. 95 (1972).

\* \* \*

Although it is not entirely clear, it appears that the government concedes that the depositions of Oben Eyong and Valery Donfack may take place, and only contests the deposition of Thompson Ndip.[1]  Therefore, this pleading will focus primarily on the latter.

---

[1]        Because of the self-contradictory nature of the government's opposition, the defense is left pondering what exactly the government's position is.  The government advised defense counsel during a phone conversation prior to filing the opposition that it would not oppose the taking of the depositions of Oben Eyong or Valery Donfack.  In the first footnote in its response the government says it "only opposes the taking of one of the proposed Rule 15 depositions," and that it "does not oppose taking the depositions of Valery Donfack or Oben Tabi Eyong."  Nevertheless, on page 4, the government states that Mr. Eyong "has not met its burden with respect to the depositions of Donfack and Oben Eyong," while on page 13 it states that it "does not oppose in principle the taking of the depositions of Valery Donfack and Oben Tabi Eyong."  And, in conclusion, on page 16 it states that defendant's motion for foreign depositions

The government's opposition suffers from a tendency to "put the cart before the horse"[2] arguing both that the depositions should not be ordered because the arrangements have not been made, and that the deposition of Thompson Ndip should not be taken because the Court might later rule the testimony inadmissible.

First, with respect to the depositions of Donfack and Oben[3], final arrangements will be made in consultation with the government when the Court orders the depositions may take place. Given the government's apparent willingness to concede these two depositions are appropriate, inquiries have been made of the State Department and it has advised that the arrangements can be made. There have been conversations between defense counsel and government counsel about possible locations and counsel will coordinate schedules to ascertain when the depositions can occur. Mr. Eyong would welcome the government's assistance in this matter, but the government has so far declined to offer any assistance – the government's help would clearly make the process much more simple. The government has raised a concern about whether Mr. Donfack and Oben have fifth amendment concerns. However, despite advising that it would do so in its opposition to Mr. Eyong's motion, the government has not yet made any proffer about what those concerns might be, nor did any become apparent in defense interviews of the two

---

should be denied. Thus, fathoming the government's position is no simple matter.

[2]    *See* Cicero (106 BC – 43 BC) *On Friendship* ("We suffer from carelessness in many of our undertakings: in none more than in selecting and cultivating our friends. We put the cart before the horse, and shut the stable door when the steed is stolen, in defiance of the old proverb.")

[3]    As in his original motion, to avoid confusion Oben Eyong will be referred to by his first name, while Njock Eyong will be referred to as Mr. Eyong.

witnesses.  Nothing the defense intends to ask   the witnesses about implicates them in a crime and they have not provided any information suggesting that they have committed a crime.  If the government has information to the contrary, it should be provided.  These witnesses do, of course, understand the government's theory of prosecution of Mr. Eyong and are willing to be deposed.

Second, the government argues that the Court should not order the deposition of Thompson Ndip because the testimony may later be deemed inadmissible.  The government cites no authority for the remarkable proposition that the court should determine admissibility before ordering the deposition.  In fact, the case from which it quotes *dicta*, United States v. Drougal, 1 F.3d 1546 (11th Cir. 1993), stands for the exact opposite.  In Drougal, the district court denied the government's request to take foreign depositions because of concerns about the admissibility of the evidence obtained, finding those concerns "largely premature and speculative."  Id. at 1554 When the defense objected to the depositions in Drougal on the grounds that the defendant's right to confront witnesses, a constitutionally protected right, would be violated admitting the testimony, the court noted

> We fail to see, however, how the mere *taking* of depositions threatens that right. Only when deposition testimony is sought to be introduced in evidence are the defendant's confrontation rights truly implicated.   Before then the process is simply one of preserving testimony for *possible* subsequent use.  At trial, if admission of the deposition would violate the Sixth Amendment, the court could – indeed should – exclude the deposition. . . . At that time, the district court will be in a superior position to analyze the confrontation issue, because it will be able to review the actual deposition transcripts, audiotapes, and/or videotapes to determine whether introducing the depositions would be inconsistent with the defendant's constitutional rights.  *See United States v. Salim*, 855 F.2d 944, 952 (2d Cir. 1988).  "This approach comports with both the purpose and language of Rule 15, which concentrates first on preservation of testimony and only thereafter focuses on admissibility." *Id*.

3

Drougal, 1 F.3d 1546, 1554-55; see also United States v. Sines, 761 F.2d 1434, 1439 (9th Cir.

1985) ("argument confuses the prerequisites for *taking* a deposition . . with the prerequisites for

*admitting* a deposition into evidence"; deposition should be taken "for possible use at trial").

Rule 15(a)  provides in relevant part that "a party may move that a prospective witness be

deposed in order to preserve testimony for trial."  Nothing in the rule suggests that the deposition

may only be taken if a ruling has been made about the ultimate admissibility of the testimony.  In

fact, Rule 15(f) provides that "[a] party may use all or part of a deposition as provided by the

Federal Rules of Evidence," clearly contemplating a subsequent determination of admissibility.

See United States v. Mann, 590 F.2d 361, 366 (1st Cir. 1978) (court should err on the side of

allowing the deposition to preserve the testimony and leave until trial the determination of

whether to admit the deposition).  Thus, now is not the appropriate time for the Court to consider

whether the testimony of Mr. Thompson Ndip will ultimately be admissible.  Rather, the Court

should focus on whether Rule 15 has been satisfied – an issue the government does not address.

While it is premature for the Court to resolve the admissibility of the testimony at this

juncture, in any event the government's argument is incorrect.  Mr. Thompson Ndip has

information material to the defense as his brother, Stephen Ndip, admitted to Thompson that

while he was in the Congressman's Office assisting Mr. Eyong in the processing of the

invitations, he modified a letter and used it to invite several of his friends who were

Cameroonian activists to the United States.  Thompson Ndip was angry and ashamed of what his

brother had done.  He advised his brother to apologize to Mr. Eyong, and Thompson also called

Mr. Eyong to express an apology on behalf of his family. Stephen Ndip later died in the United States after being involved in a car accident.[4]

There can be no question that the testimony is material. Thompson Ndip establishes that the alterations to the letters regarding the CBC conference were sent out without defendant's knowledge, that defendant confronted Stephen Ndip about the matter, and that Stephen Ndip admitted sending the altered letters out without Mr. Eyong's knowledge. It is hard "to imagine testimony more critical to this case." Drogoul, 1 F.3d at 1554. The standard for deposing a foreign national is not whether his or her testimony will result in acquittal, but whether it appears the anticipated testimony is material. See United States v. Bronston, 321 F. Supp. 1269, 1271 (S.D.N.Y. 1971); United States v. Hagedorn, 253 F. Supp. 969, 971 (S.D.N.Y. 1966). The testimony is "highly material to this case," and the depositions should be ordered so that Mr. Eyong "may have a fair opportunity to [defend] this case." Drougal at 1553, 1558.

The government has argued that this testimony would be inadmissible hearsay. To the contrary, it is admissible as a statement against interest, admissible when the declarant is unavailable. Rule 804(b) provides in pertinent part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *

---

[4]    The government seeks to impugn Mr. Ndip's credibility by citing counsel's inartful description of the cause of death of his brother. Although counsel confirmed with Mr. Ndip that his brother passed away in the United States, counsel has no recollection of asking Mr. Thompson Ndip how his brother died, nor obtaining any explanation from Mr. Ndip of the cause of death. Counsel understands that Mr. Stephen Ndip was in a car accident and suffered injuries from that accident but survived. Sometime later, he died from what his friends believed were complications from the accident. The fact of his death is relevant only to his unavailability as a witness. His cause of death is not relevant.

> A statement which was at the time of its making so far contrary to the declarant's
> pecuniary or proprietary interest, or so far tended to subject the declarant to civil
> or criminal liability, or to render invalid a claim by the declarant against another,
> that a reasonable person in the declarant's position would not have made the
> statement unless believing it to be true. A statement tending to expose the
> declarant to criminal liability and offered to exculpate the accused is not
> admissible unless corroborating circumstances clearly indicate the trustworthiness
> of the statement.

Stephen Ndip, the declarant is deceased. "Death [is] the most obvious and irreversible form of

unavailability." United States v. Thevis, 84 F.R.D. 57, 62, aff'd, 665 F.2d 616 (5th Cir. 1982).

The statement Mr. Ndip made was against his interest, would not have been made unless true,

and is corroborated by other circumstances, some of which are known now and some of which

may only come to light during the trial. The statement was made shortly after the incident

occurred, to a person who has no motive to lie about the statement, and under circumstances in

which there was no motive for the declarant to lie. It was not made to defense investigators on

the eve of trial. The statement was also made at a time Stephen Ndip was in the United States

and thus subject to both civil and criminal liability for his actions. In addition to the possibility

that he could be prosecuted for his wrongdoing, the statement subjected him to civil liability.

As the Supreme Court has recognized, "[f]ew rights are more fundamental than that of an

accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302

(1973) (citing Webb v. Texas, 409 U.S. 95 (1972); Washington v. Texas, 388 U.S. 14 (1967); In

re Oliver, 333 U.S. 257 (1948)). In Chambers, the defense sought to introduce a statement in

which the declarant indicated that he, rather than the defendant, had committed the charged

homicide. The trial court excluded the statement because the state hearsay rule did not contain

an exception for declarations against penal interest. 410 U.S. at 299. Moreover, the state's rule

prohibiting parties from impeaching their own witnesses precluded the defendant from calling

the declarant to the stand and introducing his statement against him.  Id. at 295-96.

The Supreme Court reversed, stating:

> Although perhaps no rule of evidence has been more respected or
> more frequently applied in jury trials than that applicable to the
> exclusion of hearsay, exceptions tailored to allow the introduction
> of evidence which in fact is likely to be trustworthy have long
> existed.  The testimony rejected by the trial court here bore
> persuasive assurances of trustworthiness and thus was well within
> the basic rationale of the exception for declarations against interest.
> That testimony also was critical to Chambers' defense.  In these
> circumstances, where constitutional rights directly affecting the
> ascertainment of guilt are implicated, the hearsay rule may not be
> applied mechanistically to defeat the ends of justice.

Id. at 302.

In assessing the reliability of the statements against penal interest, the Court identified

four factors that established the trustworthiness of the statements: (1) the statements were made

spontaneously to close acquaintances of the declarant shortly after the murder occurred; (2) each

statement was corroborated at trial by other independent evidence; (3) the statements were self-

incriminating; and (4) the declarant was available for cross-examination.  Id. at 300-01.

Applying these factors, the Court held that the statements should have been admitted as

declarations against penal interest and that the exclusion of the statements deprived Chambers of

his due process right to present a defense because his defense was "far less persuasive than it

might have been ... had the other confessions been admitted."  Id. at 294.

Under Rule 804(b)(3), which was enacted after the Chambers decision, an unavailable

declarant's statement against interest is admissible to the extent that it

> so far tended to subject the declarant to civil or criminal liability, ...
> that a reasonable person in the declarant's position would not have
> made the statement unless believing it to be true. A statement
> tending to expose the declarant to criminal liability and offered to
> exculpate the accused is not admissible unless corroborating
> circumstances clearly indicate the trustworthiness of the statement.

Thus, to be admissible under Rule 804(b)(3), a statement against the declarant's penal interest

that is offered to exculpate the defendant must be "clearly" corroborated. Although this degree

of corroboration is more than minimal, it should not be made "unrealistically severe" or "too

onerous a burden" for the defense. See 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's

Evidence, § 804.06[5][b], at 804-60 (2000) (additional citations omitted). According to the

Advisory Committee Notes to Rule 804(b)(3), "the requirement of corroboration should be

construed in such a manner as to effectuate its purpose of circumventing fabrication."

Accordingly, the rule does not require that corroborating circumstances "remove all doubt"

concerning the trustworthiness of the statement. United States v. Brainard, 690 F.2d 1117, 1125

n.14 (4th Cir. 1982) (holding that district court erred in excluding unavailable declarant's

statements against penal interest where declarant had no motive to lie and made statements on a

number of occasions).

In this case, Mr. Stephen Ndip's statement was against his penal interest in that it tended

to implicate him in criminal wrongdoing. See United States v. Jinadu, 98 F.3d 239, 246 (6th Cir.

1996) (statement tends to subject the declarant to criminal liability if it would be probative at trial

against the declarant); United States v. Brainard, 690 F.2d 1117, 1124 (4th Cir. 1982) (statement

that defendant not involved in fraudulent activity was against declarant's interest even though did

not directly implicate declarant because it "strengthened the impression that he had an insider's

knowledge of the scheme, that it had elements of a shady nature" and defendant not involved);

United States v. Barrett , 539 F2d 244, 252 (1st Cir. 1976) (declarant's statement that defendant

not involved was statement against interest).  A reasonable man in Mr. Ndip's position would not

have made the statement unless it was true.

Additionally, there are sufficient corroborating circumstances to deem the statement

trustworthy. It is unclear from the plain language of the corroboration requirement in Rule

804(b)(3) whether a trial judge is required to focus on the circumstances surrounding the actual

making of the statement, or the existence in the record of evidence corroborating or contradicting

the substance of the statement, or both.  Courts applying the rule have evaluated a number of

factors similar to those considered in Chambers to determine the reliability of an unavailable

witness's statement against penal interest offered to exculpate the accused.  See, e.g., United

States v. Price, 134 F.3d 340, 347-48 (6th Cir. 1998) (focusing on circumstances under which

statement was made and other evidence in record supporting or contradicting statement); United

States v. Slaughter, 891 F.2d 691, 698 (9th Cir. 1989) (same); United States v. Salvador, 820 F.2d

558, 561-62 (2d Cir. 1987) (same); United States v. Thomas, 571 F.2d 285, 289-90 (5th Cir.

1978) (same); United States v. Garcia, 986 F.2d 1135, 1139-41 (7th Cir. 1993) (focusing

exclusively on circumstances involving the making of the statement); United States v. Brainard,

690 F.2d at 1124-25 (4th Cir. 1982) (same).

Like the Second, Fifth, Sixth, and Ninth Circuits, this circuit appears to require

corroboration of a Rule 804(b)(3) statement by examining the evidence relating to the making of

the statement and other evidence in the record either supporting or contradicting the statement.

See United States v. Edelin, 996 F.2d at 1241-42 (affirming district court's exclusion of

declarant's statement that drugs found in room declarant shared with defendant did not belong to defendant as insufficiently trustworthy under Rule 804(b)(3) where declarant gave statement to defense investigator he knew was working for defendant, declarant was related to defendant and may have had reason to fabricate, investigator obtained statement on day of trial, and none of other defense witnesses corroborated statement).

The court must consider pertinent corroborating circumstances concerning the making of the statement by Stephen Ndip.  Unlike <u>Edelin</u>, in which the court interpreted the fact that the declarant's statement against interest was made to the defense investigator as weighing against the trustworthiness of the statement, 996 F. 2d at 1242, here the statement was made to his brother – someone who did not even know Mr. Eyong – and before defense counsel was involved in the case.  Also, unlike <u>Edelin</u>, here the statements were made not on the day of trial, but shortly after the incident occurred, and well before the criminal investigation began.  Also there is no reason to assume that because Mr. Stephen Ndip was a friend of Mr. Eyong's he would fabricate a confession when speaking with other friends of his.  <u>See</u> <u>United States v. Nagib</u>, 56 F.3d 798, 805 (7th Cir. 1995) (rejecting argument that because declarant and defendant knew each other for some time, it was likely that declarant fabricated story for defendant's benefit; statement admitted under Rule 804(b)(3) as corroborating circumstances indicated reliability).

The government argues that the statement was not against Stephen Ndip's penal interest because it was made to his brother rather than to law enforcement, and thus, he could not reasonably be aware that the statement was subjecting him to criminal liability.  Unfortunately for the government, that is not the law.  First, the statement does not have to be against his penal interest, it can also be against his interest in many other ways. "A statement is against pecuniary

and proprietary interest when it threatens the loss of employment, or reduces the chances for future employment, or entails possible civil liability." Gichner v. Antonio Troiano Tile & Marble Co., 410 F.2d 238 (D.C. Cir. 1969) (statement by employee that had been smoking on leased premises few hours before fire started was admissible as statement against interests because raised possibility of civil liability despite no admission that had been smoking in careless manner). Additionally, the fact that the statement was made to his brother rather than to law enforcement does not preclude the finding that it was against his penal interest. Statements made to friends, family, or confederates are often deemed against penal interest. "The Rule does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution. Rather, it simply requires that the incriminating statement sufficiently 'tended' to subject the declarant to criminal liability 'so that a reasonable man in his position would not have made the statement unless he believed it to be true.'" United States v. Lang, 589 F.2d 92, 97 (2nd Cir. 1978) (statement to undercover agent believed to be confederate admissible); United States v. Barrett, 539 F.2d 244, 249-51 (1st Cir. 1976) (statement made to acquaintance during card game was against penal interest despite argument that declarant "might not so readily have perceived the disserving character of what was said not have expected his words to be repeated to the police") See also, United States v. Maliszewski, 161 F.3d 992, 1009 (6th Cir. 1998) (deceased declarant's statement to his wife that "someone is trying to cut him out of the drug-supply loop is to admit that he is a drug supplier, which is against his penal interest" even though at time declarant made statement had no knowledge of ongoing investigation and no reason to believe wife would inform police); United States v. Mock, 640 F.2d 629, 631 (5th Cir.1981) (declarant's statement to his wife that he was going to Tampa to discuss marijuana

smuggling with defendant was admissible as against penal interest even though given not to anyone likely to prosecute him, but to his wife); United States v. Goins, 593 F.2d 88, 91 (8th Cir. 1979) (decedent's admission to daughter that she lied in grand jury proceeding admissible as against penal interest; "[a]cknowledgment of criminal activity is generally made only to confidants or to persons in whom the declarant imposes trust").  In fact, one of the factors the Chambers Court identified as tending to show reliability was that the statement was made close in time and to a close acquaintance.  Chambers v. Mississippi, 410 U.S. 284, 302 (1973).

There is substantial corroboration in this case.  The government concedes that Mr. Stephen Ndip lived with Mr. Eyong at the time.  The testimony of Valerie Donfack (which the government does not contend is inadmissible) is corroborative.  Thus, there is sufficient evidence to meet the requisite standard of corroboration under Rule 804(b)(3).  See Chambers, 410 U.S. at 300 (requiring that confession only be corroborated by "some" evidence); United States v. Slaughter, 891 F.2d at 698 (holding that statements against interest that exculpated defendant were sufficiently corroborated where declarant made statements on two different occasions, second statement was made after she understood statements could subject her to criminal liability, and statements were corroborated by defendant's testimony; conviction reversed); United States v. Arthur, 949 F.2d 211, 216-17 (6th Cir. 1991) (holding that declarant's confession to FBI that he committed bank robbery with which defendant was charged sufficiently corroborated by surveillance photo of declarant and physical evidence; conviction reversed); United States v. Lopez, 777 F.2d 543, 554 (10th Cir. 1985) (holding that declarant's statements against interest sufficiently corroborated by lack of fingerprint evidence; conviction reversed); United States v. Thomas, 571 F.2d at 289-90 (holding that co-defendant's self-incriminating

statement at preliminary hearing exculpating defendant sufficiently corroborated by another accomplice's testimony that declarant was mastermind of charged bank robbery and defendant only was marginally connected; conviction reversed); United States v. Benveniste, 564 F.2d at 339-42 (holding that alleged accomplice's statements against interest that tended to exculpate defendant sufficiently corroborated by other evidence indicating that defendant did not play significant role in charged drug conspiracy; conviction reversed).

Furthermore, the corroboration requirement cannot be as stringent as the government contends. In United States v. Garcia, 986 F.2d 1135 (7th Cir.1993), the court reversed a conviction due to the erroneous exclusion of a codefendant's statement that exculpated the defendant. The court described the corroboration requirement of the Rule:

> [T]he corroboration requirement of 804(b)(3) is a preliminary question as to the admissibility of evidence, not an ultimate determination as to the weight to be given such evidence. The district judge does not need to be completely convinced that exculpatory statements are true prior to their admission. Such a high burden was not intended by the corroboration requirement of 804(b)(3). The district court must find only that sufficient corroborating circumstances exist and then permit the jury to make the ultimate determination concerning the truth of the statements.

Id. at 1138. Additionally, the government's contention that the deposition should not be ordered because there is no guarantee that Mr. Ndip could be sanctioned for perjury is equally unavailing. See United States v. Ramos, 45 F.3d 1519, 1523 (11th Cir. 1995) (cannot reject deposition request because of inability to sanction for perjury, difficulty in scheduling or concerns about safety).

The proffered testimony would satisfy the requirements of 804(b)(3). Moreover, the Supreme Court has recently reaffirmed the importance, under various provisions of the

Constitution, of allowing evidence of third-party guilt.  Holmes v. South Carolina, 547 U.S. 319,

126 S.Ct. 1727 (2006).  The Court's reasoning is equally applicable to the present case:

> [T]he true strength of the prosecution's proof cannot be assessed without
> considering challenges to the reliability of the prosecution's evidence.  Just
> because the prosecution's evidence, *if credited*, would provide strong support for
> a guilty verdict, it does not follow that evidence of third-party guilt has only a
> weak logical connection to the central issues in the case.  And where the
> credibility of the prosecution's witnesses or the reliability of its evidence is not
> conceded, the strength of the prosecution's case cannot be assessed without
> making the sort of factual findings that have traditionally been reserved for the
> trier of fact.

126 S.Ct. at 1734 (emphasis in original).

Furthermore:

> Interestingly enough, Rule 804(b)(3) demands corroboration only
> when the defense offers the declaration against interest; there is no
> statutory requirement for corroboration when the prosecution
> resorts to the declaration exception. One commentator has attacked
> the constitutionality of the rule as a denial of equal protection.[57]
>
> [57] Tague, "Perils of the Rulemaking Process:  The Development,
> Application, and Unconstitutionality of Rule 804(b)(3)'s Penal
> Interest Exception," 69 Geo. L.J. 851, 978-1011 (1981).

Imwinkelreid, et. al., Courtroom Criminal Evidence, 2d ed. , p. 381 (Michie 1993).  In the

present case, defendant contends that if the court finds for some reason that the last clause of

804(b)(3) has not been satisfied, then it is unconstitutional to impose this requirement solely on

defendants.  Neither this argument nor the due process argument discussed above were addressed

by the court in Edelin.

The exclusion of this crucial evidence that supports Mr. Eyong's defense would deprive

him of the opportunity to defend himself against the full weight of the prosecution's evidence.

Chambers and its progeny require that such essential information be provided to the jury when

14

circumstances, such as those here, clearly indicate the trustworthiness of that information.  The exclusion of this exculpatory evidence would deprive Mr. Eyong of a fair and full opportunity to defend against the government's charges.  Just as importantly, now is not the time to determine the question of admissibility.  Rather, once the deposition is taken, and after the Court has heard the evidence in the trial, the Court will be in a better position to determine whether the testimony should be admitted.

### CONCLUSION

Mr. Eyong has demonstrated that the testimony of Thompson Ndip of Cameroon, Valery Donfack of Hanover, Germany, and Oben Eyong of Berlin, Germany, is sufficiently necessary to warrant a finding of exceptional circumstances under Rule 15.  Indeed, the government does not appear to oppose the depositions of Oben Eyong or Valery Donfack.  Each of these witnesses has been interviewed by defense counsel, has relevant information to offer, is willing to be deposed, and is unwilling or unable to come to the United States for trial.  Thus, the Court should order the depositions to proceed to preserve their testimony for trial.  Defense counsel has every intention to work cooperatively with the government to set the depositions up at a time and place mutually acceptable to all involved parties.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/"s"/_____

MICHELLE PETERSON
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202)  208-7500

15